**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| | : | |
| EDWARD VINES, | : | |
| Plaintiff, | : | CASE NO. 3:16-cv-327 (MPS) |
| | : | |
| v. | : | |
| | : | |
| JANSSEN PHARMACEUTICALS, *et al.*, | : | |
| Defendants. | : | |
| | : | |

## RULING ON MOTIONS TO DISMISS

*Pro se* plaintiff Edward Vines ("Vines") is a former inmate in the Connecticut

correctional system who was allegedly prescribed the drug Risperdal for off-label uses between

September 24, 2002, and March 25, 2003. Vines sues the manufacturer, defendants Janssen

Pharmaceuticals and Johnson and Johnson, as well as his primary psychiatric prescriber, Dr.

Ronald Hensley, and Hensley's employer, UConn Correctional Managed Healthcare, alleging

that they violated his rights under the Eighth and Fourteenth Amendments of the U.S.

Constitution and Article First, Section 10, of the Connecticut Constitution. Vines' second

amended complaint ("SAC") alleges that the defendants participated in a scheme to promote

Risperdal for off-label use and to provide kickbacks to physicians who prescribed it. (ECF No.

18.) All defendants now move to dismiss the SAC under Rules 12(b)(1) and 12(b)(6). (ECF

Nos. 61, 63, 77, 80.) For the reasons that follow, I GRANT the motions to dismiss.

### I.   Relevant Background

####    *A.    Vines' Allegations*

Vines is *pro se* and a former inmate who was incarcerated within the Connecticut

Department of Correction when he filed the SAC.[1]  The SAC makes the following allegations.

Between March 3, 2002 and December 31, 2003, Janssen Pharmaceuticals, a subsidiary of Johnson and Johnson (collectively, "Janssen"), introduced the antipsychotic drug Risperdal "into interstate commerce."  (SAC at ¶ 12.)  Janssen issued a policy to its sales representatives to promote Risperdal to physicians to prescribe Risperdal for off-label treatment of symptoms including anxiety, agitation, depression, hostility, and confusion, while knowingly downplaying the drug's risks.  (SAC at ¶ 13.)  Janssen also incentivized this practice by basing its sales representatives' bonuses on total Risperdal sales, not just those for FDA-approved use.  (SAC at ¶ 14.)  The SAC also alleges that Janssen caused false claims to submitted to federal health care programs by promoting Risperdal for off-label uses that those programs did not cover, making false statements about the safety and efficacy of the drug, and paying kickbacks to physicians to prescribe Risperdal.  (SAC at ¶ 15.)

On September 24, 2002, while Vines was confined at Northern Correctional Institution (SAC at ¶ 17), he was prescribed Risperdal by his primary psychiatric prescriber, Dr. Ronald Hensley ("Hensley").  (SAC at ¶¶ 9, 11.)  Hensley was employed by UConn Correctional Managed Healthcare ("UCMH"), which was under contract to provide mental health and medical treatment to Connecticut state prisoners.  (SAC at ¶ 10.)  UCMH, "persuaded by the incentive from receiving kickbacks from [Janssen]," issued a policy to its employees "urging them to use Risperdal for off-label treatments with Connecticut state prisoners."  (SAC at ¶ 16.)  Hensley

---

[1] Though Vines has failed to file a *pro se* appearance as required by the Court's ECF No. 76 Order, the Court's review of the docket indicates that Vines is no longer incarcerated.

prescribed Risperdal to Vines to treat symptoms of anxiety, agitation, depression, hostility, and confusion. (SAC at ¶ 11.) Hensley did not inform Vines that he was prescribing Risperdal for off-label use or tell him about the severe side effects of the medication. (*Id.*)

Starting in November 2002, Vines began complaining of severe dizziness, restlessness, and tremors. (SAC at ¶ 17.) On March 25, 2003, Hensley discontinued Vines' prescription of Risperdal. (SAC at ¶ 19.) Vines had stopped taking Risperdal some time before March 25, 2003, and after complaining of breast pain, severe dizziness, restlessness, and tremors. (SAC at ¶ 19.)

Vines continued to complain of the same symptoms to UCMH staff throughout 2005 and 2007, when Vines was housed at McDougall and Corrigan Correctional Institutions. (SAC at ¶¶ 20–22.) Vines' symptoms went untreated until 2014, when Vines was diagnosed with Vertigo, anxiety, ADHD, at Cheshire Correctional Institution. (SAC at ¶¶ 23–24.) In 2015, UCMH staff at Osborn Correctional Institution diagnosed Vines with PTSD; and in 2016, UCMH staff at Osborn diagnosed certain additional neurological symptoms in Vines' shoulders, arms, and legs as neuropathy and sciatica. (SAC at ¶¶ 24–25.)

On October 22, 2014, the Department of Justice issued a press release stating that Janssen had pled guilty to misbranding Risperdal, making false statements about the safety and efficacy of the drug, and promoting it to health care providers for off-label treatment. (SAC at ¶¶ 7, 27.) Vines alleges that he was not aware of the harmful side effects of Risperdal prior to this release. (SAC at ¶ 7.)

Vines now sues UCMH, Dr. Hensley (in both his official and individual capacity), and

Janssen for violation of 42 U.S.C. §§ 1983, 1988, the Eighth and Fourteenth Amendments, and Article First, Section 10, of the Connecticut Constitution. (ECF No. 18.)[2] He seeks compensatory and punitive damages and a declaratory judgment "that the Defendant[s'] actions described herein are unlawful and violate the Plaintiff's civil rights." (SAC at 7.)

B. *Procedural History*

The procedural history of this case warrants brief discussion. After Vines first filed suit on February 29, 2016, the Court dismissed his complaint without prejudice in a March 8, 2016 initial review order as untimely for failure to comply with § 1983's three-year statute of limitations or plead facts sufficient to show that equitable tolling applied. (ECF No. 7.) Vines then filed an amended complaint, which this Court again dismissed as time-barred. (ECF Nos. 8, 9.) In particular, Vines' amended complaint identified a 2006 study and 2008 Wall Street Journal article explaining the risks of taking Risperdal for off-label use, two 2012 lawsuits against Janssen concerning the risks of Risperdal, and the 2014 Department of Justice press release described above. (ECF No. 9 at 2–3.) I found that although Vines had alleged that the defendants concealed Risperdal's possible side effects, Vines had not alleged that the defendants concealed the existence of these news reports and lawsuits, which put him on notice of his claims. (ECF No. 9 at 4–5.) I thus concluded that § 1983's three-year statute of limitations was not equitably tolled and so his claims were time-barred. (ECF No. 9 at 5–6.)

---

[2] 42 U.S.C. § 1988 is the federal civil rights attorneys' fee statute, not an independent cause of action, and I need not address it further. *See Weiss v. Violet Realty, Inc.*, 160 F. App'x 119, 120 (2d Cir. 2005) ("§ 1988 does not provide an independent cause of action.").

Vines appealed this Court's second initial review order (ECF No. 11), and on September 1, 2016, the Second Circuit vacated and remanded, directing the Court to consider whether the continuing violation doctrine applied. (ECF No. 13.) I therefore considered whether Vines' amended complaint alleged a claim falling within the doctrine, and concluded in a November 21, 2016 order that it did not:

> In accordance with the Second Circuit's order of remand (ECF No. 13), this Court has considered whether the operative complaint alleges a claim falling within the continuing violation doctrine. It does not. . . .To do so, "plaintiff must allege both the existence of an ongoing policy of deliberate indifference to his or her serious medical needs and some non-time-barred acts taken in the furtherance of that policy.["] *Shomo v. City of N.Y.*, 579 F.3d 176, 182 (2d Cir. 2009) (internal quotation marks and citations omitted). The operative complaint does not allege any ongoing policy of deliberate indifference to the plaintiff's medical needs by any defendant and it does not allege non-time-barred acts taken in furtherance of any such policy by any defendant. The complaint alleges that some of his symptoms that were in fact side effects of Risperdal were not diagnosed until "on or after October 22, 2014." (ECF No. 8 at 5.) The complaint does not specify who diagnosed the symptoms, whether the health care provider who diagnosed the symptoms had any awareness of a connection to Risperdal, and how any such conduct was related to any "policy" of deliberate indifference stretching back to the time when plaintiff was prescribed Risperdal by Defendant Hensley. Indeed, the complaint pleads no facts suggesting that Defendant Hensley had any involvement in the plaintiff's treatment after 2003. The complaint also alleges that plaintiff was unaware of the harm because of "false and misleading statements by the defendant(s) who knowingly downplayed risk concerns of the drug Risperdal." (Id. at 4.) This does not allege that it was Defendant Hensley who made these statements, whether the statements were made within the non-time-barred period, and whether the statements were made in furtherance of a policy of deliberate indifference.

(ECF No. 16.) Nonetheless, I allowed Vines to file a second amended complaint that pleaded facts to bring his claim within the scope of the doctrine. (*Id.*) Vines then filed the Second Amended Complaint, which is the operative complaint, on December 1, 2016. (ECF No. 18.) Following numerous issues with service, the SAC was successfully served through counsel the Court specially appointed for this purpose. In June 2018, both UCMH and Dr. Hensley in his

official capacity moved to dismiss the SAC.  (ECF Nos. 61, 63.)  On June 21, 2018, the Court

terminated Vines' appointed counsel and ordered Vines to show cause why UCMH and Dr.

Hensley's motions should not be granted on the grounds that they are immune from suit under

the Eleventh Amendment.  (ECF No. 72.)  Vines failed to respond to the Court's June 21, 2018

order.  In an abundance of caution, on July 12, 2018, the Court issued another text order

requiring Vines to enter a *pro se* appearance, again ordering Vines to show cause why his claims

against UCMH and Dr. Hensley in his official capacity should not be dismissed as barred by

Eleventh Amendment immunity, and directing the Clerk's Office to mail a copy of the motions

to dismiss, the June 21, 2016 order, a *pro se* appearance form, and the order itself to Vines at his

address on file.  (ECF No. 76.)  Once again, Vines failed to respond.[3]  On July 12, 2018, Janssen

filed a motion to dismiss (ECF No. 77), and on July 31, 2018, Dr. Hensley moved to dismiss the

claims against him in his individual capacity (ECF No. 80).  As of the date of this decision,

Vines has not responded to any of the pending motions.[4]

## II.    Legal Standard

On a motion to dismiss, I take the plaintiff's factual allegations in the complaint "to be

true and [draw] all reasonable inferences in" his favor.  *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir.

2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[3] Given Vines' failure to respond to the Court's clear order for Vines to enter a *pro se* appearance or show cause, the Court would be justified in dismissing Vines' SAC under Rule 41(b) for failure to prosecute.  Nonetheless, the Court addresses Vines' claims on the merits and finds them wanting in any event.

[4] The Defendants have included with their motions a statement to *pro se* litigants required by this Court's Local Rule 12(a).  (ECF Nos. 62, 64, 79, 81.)

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Moreover, a court should determine whether the "well-pleaded factual allegations," assumed to be true, "plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).

Generally, *pro se* plaintiffs are "entitled to special solicitude," and courts must interpret their submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citations omitted). However, "the Court need not engage in 'rank speculations' to manufacture a federal claim for *pro se* plaintiffs." *Gonzalez v. Option One Mortg. Corp.*, No. 3:12-CV-1470 CSH, 2014 WL 2475893, at *5 (D. Conn. June 3, 2014).

### III.    Discussion

#### A.    *UCMH and Dr. Hensley (Official Capacity)*

UCMH and the former office of Dr. Hensley both move on identical grounds to dismiss the claims against them under Rules 12(b)(1), 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B). (ECF Nos. 61, 63.) Specifically, they argue that: (1) Eleventh Amendment immunity bars the claims in their entirety; (2) UCMH and Dr. Hensley in his official capacity are not "persons" under §

1983; and (3) the Court should decline to exercise supplemental jurisdiction over any remaining state law claims. (ECF No. 61-1 at 2–6; ECF No. 63-1 at 2–6.)

As an initial matter, Vines' only possibly cognizable state law claim is one under "Article First ss 10 of the Connecticut Constitution," but this provision "does not itself create new substantive rights but, instead, protects access to our state's courts." *Binette v. Sabo*, 244 Conn. 23, 30 (1998) (rejecting action brought directly under Article First, § 10). Moreover, Vines does not plead any facts indicating how the defendants' conduct violated this provision. (SAC at 1.) Accordingly, the SAC states no cognizable state law claims,[5] and this Court need not address its supplemental jurisdiction.

Turning now to the crux of UCMH and Dr. Hensley's arguments, I agree that Vines' claims against them are barred by the Eleventh Amendment, and so I need not reach their second argument concerning § 1983. "The Eleventh Amendment precludes suits against states unless the state expressly waives its immunity or Congress abrogates that immunity." *See Li v. Lorenzo*, 712 F. App'x 21, 22 (2d Cir. 2017). The Eleventh Amendment bar "remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (quotations omitted). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. In addition, a plaintiff may not effect "a partial 'end run' around" the Eleventh Amendment's bar on retrospective awards of monetary relief by seeking a declaration that a state or its agents violated the law in the past.

---

[5] Because the SAC states no cognizable state law claims, I also do not address them in discussing Janssen and Dr. Hensley's motions to dismiss.

8

*Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985).)

Vines' claims against UCMH and Dr. Hensley in his official capacity are clearly barred by the Eleventh Amendment. Vines seeks an award of monetary damages from a Connecticut agency and its agent, Dr. Hensley, for actions taken in his official capacity. Therefore, both judgments would be paid out of the state treasury, which the Eleventh Amendment expressly prohibits. Vines also seeks "a declaratory Judgment that the Defendant(s) actions described herein are unlawful and violate the plaintiff's civil rights," which is entirely based on UCMH's and Dr. Hensley's past actions with respect to their prescription of Risperdal, and thus impermissibly retrospective. (SAC at 7.) Vines does not allege that Congress has abrogated Connecticut's immunity or that Connecticut has waived it. Accordingly, Eleventh Amendment immunity bars all relief that Vines seeks against UCMH and Dr. Hensley in his official capacity.

Despite the Court's issuance of multiple clear warnings to Vines (ECF No. 72, 76), he has failed to show cause why these claims should not be dismissed on Eleventh Amendment immunity grounds. Because the Court agrees that Vines' claims are barred by the Eleventh Amendment, the Court GRANTS UCMH's and Dr. Hensley's motions to dismiss Vines' claims against them in their official capacity. (ECF Nos. 61, 63.)

B.     *Janssen*

Janssen moves to dismiss all claims against it under Rules 12(b)(1) and 12(b)(6). (ECF No. 77.) Janssen argues that: (1) to the extent Vines' Eighth Amendment claim attempts to state a claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), that cause of action

does not lie against a private entity; (2) Vines fails to state a § 1983 claim because the SAC does not claim that Janssen was a state actor, or acted under color of state law, or conspired with state actors to violate § 1983; and (3) Vines' § 1983 claims are in any event time-barred because Vines has not adequately alleged that the continuing violation doctrine applies. (ECF No. 77 at 1–2.) Because I agree with Janssen on the first two arguments, I do not reach the third.

First, I agree that Vines' Eighth Amendment claim does not assert a cause of action under *Bivens*, 403 U.S. 388. In *Bivens*, the United States Supreme Court recognized an implied federal cause of action for damages against individual federal agents arising out of their violation of certain constitutionally-protected rights. *See* 403 U.S. at 389. Although *Bivens* itself involved a violation of the Fourth Amendment, later cases extended the holding to provide relief for federal officials' violations of the Eighth Amendment. *See Carlson v. Green*, 446 U.S. 14, 18–23 (1980). However, the Supreme Court has repeatedly declined to extend *Bivens* to causes of action against private companies. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001); *Minneci v. Pollard*, 565 U.S. 118, 131 (2012) (declining to extend *Bivens* to employees of private prison). In *Malesko*, the Court declined to extend *Bivens* liability to a private corporation that operated a halfway house under a contract with the Bureau of Prisons for an alleged violation of an inmate's constitutional rights. 534 U.S. at 63. The Court concluded that extending *Bivens* to private companies would not serve the purposes of *Bivens* to "deter *individual federal officers* from committing constitutional violations." *Id.* at 70 (emphasis added). And in *Minneci*, the Court declined to extend *Bivens* to employees of a private prison for allegedly depriving him of adequate medical care in violation of the Eighth Amendment. 565 U.S. at 131. The Court there

not only acknowledged the "critical difference" of whether the "personnel [were] employed by the *government*, not . . . employed by a *private* firm," but also the existence of an "adequate alternative, existing process" for the plaintiff to seek relief under state tort law in assessing whether a *Bivens* remedy would lie. *Id.* at 126–27, 131 (emphasizing that where "the conduct [alleged] is of a kind that typically falls within the scope of traditional state tort law . . . the prisoner must seek a remedy under state tort law. We cannot imply a *Bivens* remedy in such a case."); *see generally Yorzinski v. Imbert*, 39 F. Supp. 3d 218, 222–25 (D. Conn. 2014) (surveying the development of *Bivens* precedent and declining to imply a cause of action against private security guard).

There is no basis here to imply a *Bivens* action against Janssen based on Vines' Eighth Amendment claim. As Vines alleges, Janssen is a private company, not a federal agent. (SAC at ¶ 8 (Janssen and Johnson & Johnson are "compan(ies) based in the United States, acting in the scope as a U.S. company(ies) bind [sic] by federal laws.").) Vines does not allege that Janssen has any kind of contract with the Department of Correction, which is in any event a state agency. Extending *Bivens* to Janssen in this context would in no way "deter *individual federal officers* from committing constitutional violations," and in all likelihood Vines has adequate relief against Janssen in negligence or other state tort laws for its marketing of Risperdal. *Malesko*, 534 U.S. at 70 (emphasis added). Accordingly, Vines' Eighth Amendment claim against Janssen, a private company, does not state a cause of action under *Bivens*.

Although Vines may not assert an Eighth Amendment claim directly against Janssen, this does not resolve his § 1983 claims, which assert violations of both the Eighth and Fourteenth

Amendments as predicates.  (SAC at ¶ 38.)  Nonetheless, "[a] plaintiff fails to state a claim under Section 1983 where the plaintiff does not sufficiently allege that the defendant acted under color of state law."  *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002).  A private actor may act under color of state law "when the private actor is a willful participant in joint activity with the State or its agents," but a "merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."  *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).  Here, Vines makes no non-conclusory allegations that Janssen acted under color of state law.  Although Vines does make a series of allegations that Janssen "conspired" with UCMH and Dr. Hensley "in accepting fraudulent payment of kickbacks" in exchange for off-label prescriptions of Risperdal (SAC at ¶¶ 7, 15, 37), "conspired to neglect him of his serious medical needs, wherein he was misdiagnosed and went untreated from 2002 till 2014," (SAC at ¶ 22) and "caused false claims to be submitted to federal health care programs by promoting Risperdal for off-label uses that federal health care programs did not cover" (SAC at ¶ 15), such allegations conclusorily assert the existence of the kickback scheme or of false claims without any factual basis.  There are no facts alleged that would permit a reasonable inference that Janssen conspired with state actors.  Accordingly, Vines has failed to adequately plead that Janssen acted "under color of law" for his § 1983 claims against it.

C.      *Dr. Hensley (Individual Capacity)*

Dr. Hensley moves to dismiss the claims against him in his individual capacity.  (ECF No. 80.)  Dr. Hensley argues that (1) Vines fails to state an Eighth Amendment claim, (2) Hensley is entitled to qualified immunity on both the Eighth and Fourteenth Amendment claims;

and (3) Vines' claims are time-barred by the three-year statute of limitations for § 1983 actions. (*Id.* at 1.) Presuming that Vines does not attempt to assert direct constitutional claims against Dr. Hensley but simply relies on § 1983 with the Eighth and Fourteenth Amendments as predicates,[6] I conclude that the SAC does not allege any non-time-barred conduct against Dr. Hensley, and so I grant Dr. Hensley's motion to dismiss on this ground alone. *See Chisholm v. United of Omaha Life Ins. Co.*, 514 F. Supp. 2d 318, 324 (D. Conn. 2007) ("[A] defendant may raise the statute of limitations in a Rule 12(b)(6) motion where the dates in a complaint show that an action is barred by a statute of limitations." (internal quotation marks omitted)).

As I noted in the Initial Review Order (ECF No. 9), the limitations period for filing a § 1983 action in this district is three years. *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994). Under federal law, the statute of limitations begins to run when the "plaintiff knows or has reason to know of the injury which is the basis of his action." *See Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002). In both Initial Review Orders, I concluded that the three-year statute of limitations barred Vines' claims, and that neither equitable tolling nor the continuing violation doctrine could be applied to toll the statute of limitations. (ECF No. 7, 9.)

Vines' second amended complaint fares no better. The last act Vines alleges against Dr. Hensley appears to be his discontinuation of Vines' Risperdal treatment on March 25, 2003. (SAC at ¶ 19.) Vines does not allege that Dr. Hensley played any role in his continued treatment

---

[6] Nor could he, as an Eighth Amendment claim under *Bivens* could not lie as Dr. Hensley is not a federal officer, and a party cannot bring a claim directly under the Fourteenth Amendment. *See Lehman v. Doe*, 66 F. App'x 253, 255 (2d Cir. 2003) ("[W]hen § 1983 provides a remedy, an implied cause of action grounded directly in the Constitution is not

or diagnosis of his symptoms after that period. Indeed, his complaint makes clear that he was transferred to other facilities within the DOC system, where he complained to other, unidentified UCMH staff about his symptoms. (SAC at ¶ 20 (2005 complaints at McDougal C.I.), ¶ 21 (2007 complaints at Corrigan C.I.)[7], ¶ 23 (2014 diagnosis of ADHD at Cheshire C.I.), ¶¶ 25–26 (2015–16 diagnoses of PTSD and neuropathy at Osborn C.I.). There are no facts pled suggesting that Dr. Hensley continued treating Vines after the latter left Northern – or otherwise did anything after March 25, 2003. Plaintiff's initial complaint is dated February 24, 2016 (ECF No. 1). Accordingly, Vines' § 1983 claims against Dr. Hensley are time-barred on the face of the complaint.

Vines alleges that equitable tolling applies because Vines was unaware both of his cause of action and sufficient facts about the harm done to him until 2014. (SAC at ¶¶ 33–34.) Equitable tolling of § 1983 claims is determined by state law. *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) ("Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would defeat the goals of section 1983." (internal quotation marks omitted)). Under Connecticut law, equitable tolling is a "doctrine that the statute of limitations will not bar a claim if the

---

available.").
    [7] Vines alleges in the same paragraph in which he mentions his 2007 complaints to "UConn Medical Staff at Corrigan" that "Johnson & Johnson, Janssen, and Dr. Hensley neglected with deliberate indifference to acknowledge that Mr. Vines' complaints were the side effects of Risperdal." (SAC at ¶ 21.) However, this allegation is conclusory and is not linked to the allegation about complaints at Corrigan in a way that would permit a reasonable inference that Hensley was treating him in 2007. Even if I could read the complaint to allege that Hensley treated him in 2007, this action, filed in 2016, would still be time-barred.

plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." *Wiele v. Bd. of Assessment Appeals of City of Bridgeport*, 119 Conn. App. 544, 554 (2010). Though Connecticut courts have not clearly explained the criteria for applying the doctrine, trial courts have looked to federal law for guidance. *See Clemente v. Cedar Lane Rehab. & Health Care Ctr., LLC*, No. CV095027120S, 2010 WL 1050428, at *5 (Conn. Super. Ct. Feb. 11, 2010) ("There are only twelve reported Connecticut cases on the application of the doctrine, but the criteria for its application are not discussed . . ."). As in federal law, those courts have required the "litigant seeking equitable tolling [to] bear[] the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Doe v. Grove Sch., Inc.*, No. CV105033501, 2012 WL 1662510, at *1 (Conn. Super. Ct. Apr. 24, 2012) (citing *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221 (2012)). The Second Circuit has cautioned that "[e]quitable tolling is an extraordinary measure that applies only when plaintiff is *prevented from filing* despite exercising that level of diligence which could reasonably be expected in the circumstances." *See Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011) (citations and internal quotation marks omitted; emphasis in original).

Vines does not plead any facts suggesting that extraordinary circumstances exist with regards to his claims against Dr. Hensley. Vines alleges he began experiencing symptoms from Risperdal as early as November 2002. (SAC at ¶ 17). Vines discussed the side effects of Risperdal with Dr. Hensley in December 2002 and, the complaint suggests, continued to inform him of those side effects through March 2003. (SAC at ¶ 18–19) Following Vines' complaints,

Dr. Hensley terminated Vines' Risperdal treatment on March 25, 2003. (SAC at ¶ 19.) Vines

does **not** plead that Dr. Hensley continued to mislead him concerning the safety and efficacy of

Risperdal after 2003; he only pleads such conduct with respect to Janssen, the claims against

which I have dismissed for the reasons described above. (*Cf.* SAC at ¶ 30.) Rather, he alleges

that Dr. Hensley initially downplayed the risks when he first prescribed Risperdal in 2002 by

telling Vines that there were "minimal side effects" and by "not informing [him] that he was

being prescribed Risperdal for an off-label treatment". (SAC at ¶¶ 11, 18, 32.) Such an

allegation might properly sound in medical malpractice or negligence, but it does not plausibly

allege that Dr. Hensley fraudulently concealed Vines' symptoms, caused Vines to be unaware of

his cause of action against Dr. Hensley, or otherwise engaged in conduct that would support

equitable tolling. In fact, Vines' repeated complaints about his symptoms to Dr. Hensley and his

ultimate refusal to continue taking Risperdal – leading Dr. Hensley to stop prescribing it as of

March 25, 2003 – suggest that Vines was aware of his injuries and some link to Risperdal, or at

least aware of Hensley's contribution to his injuries as early as 2003. (SAC at ¶¶ 17–19.) *See*

*Kwas v. Intergraph Gov't Sols.*, No. 15CV5897JFBAYS, 2016 WL 11481724, at *5 (E.D.N.Y.

June 23, 2016) (holding that equitable tolling did not apply where complaint did not allege that

defendant "engaged in fraudulent concealment [that they manufactured and sold the allegedly

defective product at issue] . . . [or that] Defendant's conduct caused him to delay filing a

complaint in this case.") *report and recommendation adopted*, No. 15CV5897JFBAYS, 2016

WL 4502039 (E.D.N.Y. Aug. 24, 2016), *appeal dismissed*, No. 16-3289, 2017 WL 4677486 (2d

Cir. Jan. 4, 2017). Vines does allege that Dr. Hensley "conspired" to accept "kickbacks" from

Janssen, but this allegation is conclusory as Vines does not include any factual allegations supporting a reasonable inference that Dr. Hensley accepted such kickbacks from Janssen. (SAC at ¶¶ 7, 37.) Accordingly, Vines has not pleaded any extraordinary circumstances preventing him from timely filing a claim against Dr. Hensley.

Furthermore, Vines does not allege facts showing that he exercised diligence in attempting to bring this action once Dr. Hensley's treatment ceased in 2003. Although he alleges, in conclusory fashion, that he "showed due diligence in p[u]rsuing answers about Risperdal and [whether] or not its manufacture[r] and prescribers violated his constitutional rights" (SAC at ¶ 27), he does not allege what steps he took to exercise such diligence. He alleges only that he received a letter on January 14, 2016 from a lawyer at the Inmate Legal Aid Program containing information about Janssen's October 22, 2014 guilty plea. He does not allege that the lawyer sent the letter in response to inquiries he made, when such inquiries began, or what else he did to exercise "diligence" to pursue information about Risperdal. This gap in his factual allegations comes despite the fact that he had first allegedly experienced symptoms from the drug – and, hence, stopped taking it on his own – back in 2002–03. (SAC at ¶¶ 17–19.) He does not allege any facts showing actions he took between 2003 and 2016 to learn more about Risperdal or any cause of action against Dr. Hensley. In sum, equitable tolling does not apply.[8]

---

[8] Vines also argues in his complaint that *Abbas v. Dixon*, 480 F.3d 636 (2d Cir. 2007) supports his equitable tolling claim. (SAC at ¶ 33.) In *Abbas*, the Court of Appeals rejected a *pro se* inmate's invocation of equitable tolling on his § 1983 claims under New York law because, even if defendants had deceived plaintiff, plaintiff had not shown that he had exercised

Finally, the Court considers, in accordance with the Second Circuit's order of remand, whether the doctrine of continuing violation applies. The continuing violation doctrine is an "exception to the normal knew-or-should-have-known accrual date" for statutes of limitations. *See Shomo v. City of N.Y.*, 579 F.3d 176, 181 (2d Cir. 2009). In *Shomo*, 579 F.3d 176, the Second Circuit applied the continuing violation doctrine to Eighth Amendment claims alleging a policy of deliberate indifference to serious medical needs. The Court of Appeals held that for the doctrine to apply in that context, "plaintiff must allege both the existence of an ongoing policy of deliberate indifference to his or her serious medical needs and some non-time-barred acts taken in the furtherance of that policy." *Shomo*, 579 F.3d at 182 (internal quotation marks and citations omitted). I previously found that Vines' earlier complaint failed to meet these requirements, stating in relevant part:

> The operative complaint does not allege any ongoing policy of deliberate indifference to the plaintiff's medical needs by any defendant and it does not allege non-time-barred acts taken in furtherance of any such policy by any defendant. The complaint alleges that some of his symptoms that were in fact side effects of Risperdal were not diagnosed until "on or after October 22, 2014." (ECF No. 8 at 5.) The complaint does not specify who diagnosed the symptoms, whether the health care provider who diagnosed the symptoms had any awareness of a connection to Risperdal, and how any such conduct was related to any "policy" of deliberate indifference stretching back to the time when plaintiff was

"due diligence" in bringing the claim after he became aware of the deception or that defendants had taken acts to prevent him from timely filing. 480 F.3d 636, 642 (2d Cir. 2007). The same is true here—even if Dr. Hensley had *affirmatively* concealed the risk of Risperdal from Mr. Vines (which is not plausibly alleged), Mr. Vines offers no reason beyond his own lack of diligence why he did not take action to file suit against Dr. Hensley once Dr. Hensley's interactions with Vines ended in March 2003; Vines appears to have simply waited until 2016 to file suit after an attorney contacted him. (SAC at ¶¶ 27, 34.) *Abbas* thus does not support a finding of equitable tolling here.

prescribed Risperdal by Defendant Hensley. Indeed, the complaint pleads no facts suggesting that Defendant Hensley had any involvement in the plaintiff's treatment after 2003. The complaint also alleges that plaintiff was unaware of the harm because of "false and misleading statements by the defendant(s) who knowingly downplayed risk concerns of the drug Risperdal." (Id. at 4.) This does not allege that it was Defendant Hensley who made these statements, whether the statements were made within the non-time-barred period, and whether the statements were made in furtherance of a policy of deliberate indifference.

(ECF No. 16.)  The SAC does not rectify these defects with respect to Dr. Hensley.

Vines alleges that UCMH had a policy "urging its physicians and prescribers to use Risperdal for off-label treatments of prisoners."  (SAC at ¶ 31.)  Even if the Court liberally construes this allegation as adequately pleading an ongoing policy of deliberate indifference to Vines' serious medical needs,[9] Vines does not identify a single non-time-barred act by Dr. Hensley in furtherance of that policy.  In *Shomo*, the Second Circuit affirmed the dismissal of claims against a doctor because, despite the plaintiff's identification of a policy of indifference, the plaintiff did not show that the specific doctor committed at least one wrongful act within the statutory period.  *Shomo*, 579 F.3d at 183–84 (finding claim against Dr. Singh time-barred "[e]ven assuming these facts could make out a claim of deliberate indifference," where there was "no allegation that Dr. Singh ignored a medical recommendation nor any indication that Shomo had further contact with Dr. Singh after September 26, 2000."); *see Gonzalez v. Wright*, 665 F.

_____

[9] As earlier discussed, Mr. Vines also makes conclusory allegations that Dr. Hensley "conspired" to accept kickbacks from Janssen (SAC at ¶¶ 7, 37) or otherwise "conspired to neglect him of his serious medical needs, wherein he was misdiagnosed and went untreated from 2002 till 2014" (SAC at ¶ 22), but these allegations are too threadbare for the Court to credit as a general "policy" of indifference.  More importantly, any claims against Dr. Hensley based on those policies would be likewise deficient for failing to identify any non-time-barred acts by Dr. Hensley in furtherance of those policies.

Supp. 2d 334, 350 (S.D.N.Y. 2009) ("The Second Circuit's decision to affirm the dismissal of the claims against Dr. Singh and the physician assistant made clear that in order for the continuing violation doctrine to apply, plaintiff needed to show that those specific individuals committed at least one wrongful act within the statutory time period.") (citing *Shomo*, 579 F.3d at 183). Here, too, Vines' only specific allegations against Dr. Hensley relate to his conduct almost a decade before February 24, 2013, the beginning of the statutory period. (*See, e.g.*, SAC at ¶¶ 11, 17, 18, 19, 32 (all relating to Dr. Hensley's acts in the 2002 to 2003 time period).) In fact, Vines does not even allege that his subsequent symptoms were *caused* by Dr. Henley's off-label prescription of Risperdal, let alone explain how his diagnosis of vertigo, ADHD, PTSD, or neuropathy/sciatica in 2014 and onwards are connected to UCMH's policy of promoting off-label treatment. (SAC at ¶ 23–26.) But even if Vines had plausibly alleged some causal connection, the mere fact that Dr. Hensley's alleged off-label treatment between September 2002 and March 2003 caused symptoms that were not properly diagnosed until 2014 would not indefinitely extend the statute of limitations absent some specific act by Dr. Hensley during the statutory period. *See Munsch v. Evans*, No. 11-CV-2271 JFB ETB, 2012 WL 528135, at *13 (E.D.N.Y. Feb. 17, 2012) ("The fact that the detrimental effects of that discrete decision may be continuing does not extend the statute of limitations indefinitely."). Since none is alleged here, the continuing violation doctrine does not apply and Vines' claims against Dr. Hensley are time-barred. Accordingly, Vines' claims against Dr. Hensley in his individual capacity are DISMISSED.

**IV.    Conclusion**

For the foregoing reasons, I GRANT UCMH's and Dr. Hensley's motions to dismiss Vines' official-capacity claims (ECF Nos. 61, 63), GRANT Janssen's motion to dismiss (ECF No. 77), and GRANT Dr. Hensley's motion to dismiss Vines' individual-capacity claims (ECF No. 80). The SAC does not state other cognizable claims. Accordingly, the Clerk is directed to close the case and enter a judgment against plaintiff and in favor of defendants.

IT IS SO ORDERED.

_____/s/_____

Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              October 17, 2018